WALKER, Justice:
The appellant, Eugene C. Bitner, was convicted at the March 1973 Term of the Circuit Court of Madison County, Mississippi, of having murdered Winston C. Ball on January 4, 1973, and sentenced to life in the state penitentiary. From that judgment, he prosecutes this appeal. We reverse and remand for a new trial.
The record reveals that during the early morning hours of January 4, 1973, the deceased, Winston Ball went to the home of Gladys Nixon in the Town of Madison, Mississippi, where his former wife, Rebecca Ball, and the defendant Bitner had rented a room and were living together without the benefit of marriage. His alleged purpose for going there was to obtain evidence to be used against Rebecca Ball in a custody proceeding involving the Ball’s ten-year-old daughter. After arriving at the Nixon home and being invited inside by Mrs. Nixon, the deceased confronted his former wife, Rebecca Ball, and the defendant Bitner in their bedroom. Tempers flared, harsh words were passed, and a scuffle ensued resulting in the death of Winston Ball. The appellant contends that he acted in self-defense. The testimony as to what actually happened immediately prior to the shooting is in sharp dispute with Mrs. Gladys Nixon testifying as an eyewitness on behalf of the State on the one hand, and with Rebecca Ball, an eyewitness, and the appellant, Bitner, testifying for the defense.
The record further reveals that when the sheriff of Madison County and other officers arrived at the scene, the appellant Bit-ner was immediately placed under arrest for the killing of Winston Ball. After he *341 was duly advised of his constitutional rights as required by Miranda, he related his version of what had taken place supporting his claim of self-defense. Thereafter, Mrs. Nixon related her version of what had taken place to the sheriff and two officers.
When the defendant was tried in circuit court, the sheriff and the officers were permitted to relate to the jury, over the objection of appellant, what Mrs. Nixon told them had taken place immediately prior to the shooting. This testimony was erroneously admitted on the grounds that it fell within the “admission by silence” doctrine. When Gladys Nixon related her story to the officers, the appellant Bitner was in a bedroom located some fifteen feet from the kitchen of the Nixon home where this conversation took place. Each of the officers testified that the appellant was not present during the conversation, and one witness stated that he thought the appellant could hear the conversation only if he “paid real close attention.”
The testimony of Gladys Nixon was crucial and at best made out a weak case of murder for the State. To allow each of the officers in turn to bolster Mrs. Nixon’s testimony by what she had told them immediately after the shooting was highly prejudicial and constituted reversible error. Roberson v. State, 185 So.2d 667 (Miss.1966). It is undisputed that when Mrs. Nixon related her story to the officers that the appellant Bitner was in custody and had been given the Miranda warnings advising him that he did not have to make a statement if he chose not to do so. Therefore, under these circumstances, the appellant had a right to remain silent and was under no duty to protest or take issue with what was being said by Mrs. Nixon.
The United States Supreme Court effectively condemned the use of admissions by silence when the accused is in police custody in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1964) where it stated in footnote 37 at page 468, at page 1625 of 86 S.Ct., at page 720 of 16 L.Ed. 2d:
In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.
The use of such evidence was also held to be reversible in Ivey v. United States, 344 F.2d 770 (5th Cir.1965) where a defendant’s wife made a statement to a customs agent in the presence of the defendant that she and her husband had been to Mexico to get a “fix,” that each of them had received an injection of a portion of the. heroin they had purchased and that what was found on her was the remainder. A conviction of the husband was reversed, with the Court saying:
The Government’s position that it is admissible as an implied admission by appellant because made in his presence and not denied by him, is clearly untenable. Not only does the Fifth Amendment to the Constitution give a person the right to decline to make any statement himself, because it might tend to incriminate him, but it gives him the right to remain silent when another makes statements in his present (sic) that tend to incriminate him. If not, the Fifth Amendment’s protection would be an empty thing. All that would be required to rob him of that protection, against his being required to give evidence against himself, would be to have someone make a statement in his presence which tended to incriminate him. . As the court said in McCarthy v. United States, 25 F.2d 298, 299 (6th Cir. 1928):
“ * * * to draw a derogatory inference from mere silence is to compel the respondent to testify; and the customary formula of warning should be changed, and the respondent should be told, ‘If you say anything, it will be used against you; if you do not say anything, that *342 will be used against you.’ ” (344 F.2d at 772-773).
Furthermore, it is to be pointed out that even if the appellant had not been in custody or under arrest, the State wholly failed to affirmatively prove the necessary prerequisites for an “admission by silence.” The State did not show that Mrs. Nixon’s statement was made in the presence of appellant. In this regard, it is uncontradicted that appellant was in a separate room some fifteen feet away from where Mrs. Nixon was giving her statement to the officers. At best, the testimony for the State only showed that the appellant might have heard the conversation. In our opinion, this falls far short of the State’s burden to affirmatively establish that the accusatory statements were made in the presence of the defendant.
The rule with regard to admissions by silence is discussed in Anderson v. State, 171 Miss. 41, 156 So. 645 (1934) where the Court said:
It is the general rule that hearsay evidence is not admissible in evidence, though there are exceptions to the rule. If a party out of court accuses another of crime or makes statements against him, in the hearing of a third party, and the accused remains silent, or does not deny the accusation or statement affecting vitally his interest under certain conditions, the hearsay evidence of the third party as to the statement out of court is competent. But it is permitted to go into the record as evidence only upon the presumption that the silence or failure to deny, on the part of the accused, is an admission. (171 Miss. at 47, 156 So. at 646).
Further, in addition to showing that the accusatory statement was made in the presence of the accused, this Court has required that the State must affirmatively show not only that the statement charges the accused with a crime but that the accused stood mute or failed to deny it. In Robinson v. State, 235 Miss. 100, 108 So.2d 583 (Miss.1959) in reversing a conviction, the Court said:
Under the evidence in this case, the State did not show affirmatively that the statement charged the appellant with the crime. Neither did it show affirmatively that he stood mute or failed to deny the statement. Both of these elements must exist before the statement is admissible as an admission of the truth of the statement by silence. (Emphasis added). (235 Miss. at 109, 108 So.2d at 587).
In Anderson, supra, where the accusation was clear and the circumstances were such that would naturally call for a response, a failure of the State to affirmatively prove a failure to respond was held to be reversible error. In that case, two officers took the defendants to the bedside of the victim who identified them as the ones who shot him. At the trial, the victim testified regarding the out of court identifications and when the officers testified, they were permitted to relate what the victim said at his bedside. However, the record was silent as to what the defendants said or did when pointed out as the guilty parties. The case was reversed for the reason that:
This court has consistently condemned the practice of undertaking to bolster up the testimony of a witness on the stand, and to strengthen his credibility by proof of his declarations to the same effect as sworn to by him out of court. (171 Miss. at 48, 156 So. at 647).

The state in this case was the proponent of the evidence, and in our opinion the burden of proof was upon it to come within the rule that makes a statement out of court by a third party an admission on the part of the accused. (171 Miss. at 49, 156 So. at 647).

In our opinion it was necessary to show, in this case, that the accusation made against the appellants stood undenied by *343 them at the time they were pointed out as the guilty parties. (171 Miss. at 50, 156 So. at 647).
In the case sub judice the record is completely silent as to Bitner’s reaction to Mrs. Nixon’s statements if he did in fact hear it. Indeed, Mrs. Nixon and the officers could not testify as to his reaction because he was in another room and not within sight of these witnesses.
We would point out that a trial judge should be cautious in allowing into evidence “admissions by silence.” In Tate v. State, 95 Miss. 138, 48 So. 13 (Miss. 1909), this Court cited with approval Greenleaf in his work on Evidence that:
Nothing can be more dangerous than this kind of evidence. It should always be received with caution, and never received at all unless the evidence is a direct declaration of that kind which naturally calls for contradiction. (95 Miss. at 147, 48 So. at 15).
We are, therefore, of the opinion and so hold that the testimony of the sheriff and the officers with regard to what Mrs. Nixon told them about the shooting was inadmissible and constituted reversible error.
The appellant’s other assignment of error with respect to the materiality of certain matters upon which the defense witness Rebecca Ball was impeached and the proceedings used by the district attorney to impeach her has merit, but we do not deem it necessary to elaborate on them. We trust that upon a retrial of the case the evidence will be confined to material matters and that rules laid down by this Court with respect to how a witness may be impeached will be followed. See Church v. State, 179 Miss. 440, 176 So. 162 (1937).
For the reasons stated above, the case is reversed and remanded for a new trial.
Reversed and remanded.
GILLESPIE, C. J., and ROBERTSON, SUGG and BROOM, JJ., concur.